1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   RONNIE L HICKS,

8                          Plaintiff,          NO:  11-CV-0166-TOR

9        v.                                    ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS'
                                               MOTION FOR SUMMARY
10  MAGGIE MILLER-STOUT, et al.,               JUDGMENT

11                          Defendants.

12

13        BEFORE THE COURT is Defendants' Motion for Summary Judgment

14  (ECF No. 29).  This matter was heard without oral argument on December 14,

15  2012.  The Court has reviewed the motion, the response, and the reply, and the

16  record and files herein, and is fully informed.

17                          BACKGROUND

18        This is a First Amendment retaliation case.  Plaintiff, a prisoner proceeding

19  *pro se* and *in forma pauperis*, contends that he was terminated from his position as

20  a therapy aide at the Airway Heights Corrections Center ("AHCC") in retaliation

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 1

1  for filing grievances against Defendants Biddulph, Lawrence and Barlow.

2  Defendants maintain that Plaintiff was terminated because he engaged in

3  "wheelchair racing."  Defendants have moved for summary judgment on the merits

4  of Plaintiff's claims.

5                                              FACTS

6       Plaintiff Ronnie Hicks ("Plaintiff") is an inmate who at all times relevant to

7  this lawsuit was housed at the AHCC in Airway Heights, Washington.  In early

8  2011, Plaintiff was assigned to a paid position as a therapy aide.  His specific

9  responsibility in this position was to push the wheelchairs of other inmates in his

10 unit.

11      On February 3, 2011, Plaintiff received an infraction for "speed walking /

12 running as a wheel chair pusher."  ECF No. 32-3.  Plaintiff was found guilty of the

13 offense during an administrative hearing on February 4, 2011.  ECF No. 32-3.

14 Plaintiff appealed the conviction to Defendant Miller-Stout in a letter dated

15 February 5, 2011.  ECF No. 32-4.  Prison officials subsequently dismissed the

16 infraction on February 16, 2011.  ECF No. 38, Attachment B.  In dismissing the

17 infraction, prison officials noted that "[i]t is not clear in the infraction or the

18 finding what written rule is being violated by the observed behavior."  ECF No. 38,

19 Attachment B.

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 2

1    On February 18, 2011, Plaintiff filed a grievance against Defendants

2    Biddulph, Lawrence and Barlow (among others) for their handling of matters

3    unrelated to the alleged "wheelchair racing" incident.[1]  ECF No. 6-4.  Plaintiff

4    addressed this grievance to Defendant Miller-Stout and sent a "courtesy copy"

5    directly to Defendant Biddulph.  ECF Nos. 6-4, 6-1 at ¶ 13.  Defendant Biddulph

6    received the copy of Plaintiff's grievance on the morning of February 23, 2011.

7    ECF No. 6-1 at ¶ 14.

8    On the afternoon of February 23, 2011, Plaintiff was summoned to

9    Defendant Biddulph's office.  ECF No. 6-1 at ¶ 15.  When he arrived, Plaintiff was

10   called before a meeting of the prison's Facility Risk Management Team, which

11   was comprised of Defendants Biddulph, Lawrence and Barlow.  During this

12   meeting, Defendant Biddulph informed Plaintiff that he was being terminated from

13   his position as a therapy aide because there was not enough work in his unit to

14   keep him busy.  ECF No. 6-1 at ¶ 17.  According to Plaintiff, Defendant Biddulph

15   held a copy of Plaintiff's February 18th grievance in his hand during the meeting.

16   ECF No. 32-4.

17

18

19   [1] This grievance arose from the allegedly improper confiscation of Plaintiff's shoes

20   and hair trimmers.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 3

1      Plaintiff immediately appealed his termination to Defendant Miller-Stout,

2  arguing that Defendants Biddulph, Lawrence and Barlow had retaliated against

3  him for filing the February 18th grievance.  ECF Nos. 32-8, 32-9.  Defendant

4  Miller-Stout denied the appeal in two separate letters dated March 7, 2011 and

5  March 24, 2011.  In the first letter, Defendant Miller-Stout explained:

6          According to CUS Biddulph, you were removed from your position as
           a unit wheelchair pusher for two reasons.  You were witnessed by
7          staff engaging in a "wheelchair race" on the sidewalk and
           subsequently, had to be addressed by the officer in the courtyard.
8          Additionally, M-Unit staff report that there was not adequate need for
           a wheelchair pusher in the unit at the time of your termination.  There
9          is no indication that you were terminated from your job as a means of
           retaliation.  Your behavior and institution need resulted in the job loss.
10
11 ECF No. 32-10.  In a second letter, Defendant Miller-Stout wrote:

12         You were terminated from your job because you were pushing an
           offender in a wheelchair too fast, causing safety concerns for that
13         offender and others who were in the area. . . . After reviewing
           documents and speaking with staff, I do not see any retaliation and the
14         termination of your job was justifiable based on safety concerns
           displayed by you while doing your job.

15 ECF No. 32-11.  This second letter did not mention the prison's lack of a need for

16 a wheelchair pusher on Plaintiff's unit as a reason for the termination.

17     Plaintiff subsequently filed this lawsuit on April 25, 2011, alleging that

18 Defendants unlawfully retaliated against him for exercising his First Amendment

19 right to prison grievances in violation of 42 U.S.C. § 1983.  ECF No. 1.

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 4

1

DISCUSSION

2      A court may grant summary judgment in favor of a moving party who

3  demonstrates "that there is no genuine dispute as to any material fact and that the

4  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

5  "material" within the meaning of Rule 56(a) if it might affect the outcome of the

6  suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-

7  49 (1986).  A "genuine dispute" over any such fact exists only where there is

8  sufficient evidence from which a reasonable jury could find in favor of the non-

9  moving party.  *Id.* at 248.

10     The party moving for summary judgment bears the initial burden of

11 demonstrating the absence of any genuine issue of material fact.  *Celotex*, 477 U.S.

12 at 323.  Where the non-moving party has the burden of proof at trial, the moving

13 party need only demonstrate an absence of evidence to support the non-moving

14 party's claims.  *Id.* at 325.  The burden then shifts to the non-moving party to "set

15 forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477

16 U.S. at 256.  In deciding whether this standard has been satisfied, a court must

17 construe the facts, as well as all rational inferences therefrom, in the light most

18 favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 327, 378 (2007).

19

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 5

**A. First Amendment Retaliation**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Violations of this right are actionable under 42 U.S.C. § 1983. To prevail on a First Amendment retaliation claim, a prisoner must prove that: (1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took adverse action; (3) the adverse action was causally related to the protected conduct; (4) the adverse action had a chilling effect on the prisoner's First Amendment activities; and (5) the adverse action did not advance a legitimate correctional interest. *Watison*, 668 F.3d at 1114-15.

In the instant case, there is no dispute that Plaintiff has satisfied the first and second elements of his First Amendment retaliation claim. Filing prison grievances is clearly protected conduct, and Defendants concede that they took adverse action against Plaintiff by firing him from his position as a therapy aide. Accordingly, the Court will limit its analysis to the third, fourth and fifth elements of Plaintiff's claim.

　　1. Causal Relationship

To satisfy the third element of a First Amendment retaliation claim, a prisoner must establish that his or her protected activity "was the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d

1262, 1271 (9th Cir. 2009) (quotation and citation omitted).  At the summary

judgment stage, a plaintiff "need only put forth evidence of retaliatory motive, that,

taken in the light most favorable to him, presents a genuine issue of material fact as

to [the defendant's] intent." *Id.* (quotation and citation omitted).  "[T]iming can

properly be considered as circumstantial evidence of retaliatory intent." *Pratt v.

Rowland*, 65 F.3d 802, 808 (9th Cir. 1995); *see also Watison*, 668 F.3d at 1114

(explaining that the "allegation of a chronology of events from which retaliation

can be inferred is sufficient to survive dismissal").

　　　Here, there is ample evidence from which a rational jury could find that

Defendants acted with retaliatory motive.  First, Plaintiff was terminated on the

very same day that Defendant Biddulph received a copy of Plaintiff's February 18th

grievance.  Second, Defendants Biddulph, Lawrence and Barlow conducted the

termination hearing without providing Plaintiff the requisite 48-hour advance

notice.  ECF No. 32 at ¶ 8.  Finally, there is a disputed issue of material fact as to

whether Defendant Biddulph held a copy of Plaintiff's February 18th grievance in

his hand during the termination hearing.[2]  These facts are sufficient to preclude

summary judgment on the retaliatory motive element of Plaintiff's claim.

---

[2] Plaintiff steadfastly maintains that Defendant Biddulph held a copy of the

grievance in his hand during the hearing.  ECF No. 6-1 at ¶ 17; ECF No. 6-5 at ¶ 6;

ECF No. 38 at ¶ 8; ECF No. 39 at ¶ 7.  Defendant Biddulph, for his part, stated in

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 7

1    2.  <u>Chilling Effect</u>

2        To satisfy the fourth element of a First Amendment retaliation claim, a

3    prisoner must demonstrate that the defendant's conduct "would chill or silence a

4    person of ordinary firmness from future First Amendment activities."  *Brodheim*,

5    584 F.3d at 1271 (quotation and citation omitted).  This is an *objective* inquiry.  *Id.*

6    As such, the relevant question is not whether a specific prisoner's speech was

7    *actually* chilled, but whether a reasonable person faced with the same conduct

8    would be discouraged from exercising his or her First Amendment rights.  *Id.* ("[A]

9    plaintiff does not have to show that his speech was actually inhibited or

10   suppressed, but rather that the adverse action at issue would chill or silence a

11   person of ordinary firmness from future First Amendment activities.") (quotations

12   and citation omitted).

13       Plaintiff has presented sufficient evidence to establish a chilling effect on his

14   protected First Amendment conduct.  Contrary to Defendants' assertions, there can

15   be little doubt that a reasonable person in Plaintiff's position (*i.e.*, a prisoner

16   terminated from a paid position as a result of filing a grievance) would be

17   discouraged from filing future grievances.  *See Brodheim*, 584 F.3d at 1271.

18   _____

19   discovery that he did not remember having copy of the grievance in his hand

20   during the hearing.  *See* ECF No. 37, Attachment B.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 8

1  Accordingly, Defendants are not entitled to summary judgment on this element of

2  Plaintiff's claim.

3          3. <u>Legitimate Correctional Interest</u>

4          To satisfy the fifth element of a First Amendment retaliation claim, a

5  prisoner must demonstrate that the defendant's actions did not reasonably advance

6  a legitimate correctional goal. *Brodheim*, 584 F.3d at 1271-72. A defendant's

7  actions are unrelated to a legitimate correctional goal when they are either

8  "arbitrary and capricious" or "unnecessary to the maintenance of order in the

9  institution." *Watison*, 668 F.3d at 1115 (citations omitted).

10         Here, Defendants argue that their actions were motivated by a desire to

11 "maintain order and safety" in the prison. ECF No. 30 at 6. According to

12 Defendants, Plaintiff was terminated because he engaged in "wheelchair racing"—

13 an activity which "posed a safety risk not only to the offender in the wheelchair[,]

14 but also to other offenders in the area and [to] the Plaintiff himself." ECF No. 30

15 at 5. Defendants further note that Plaintiff was infracted for this behavior and that

16 "DOC Policy 700.100 specifically provides for termination of offenders who are

17 infracted for their behavior." ECF No. 30 at 5. Thus, in Defendants' view,

18 Plaintiff cannot prevail on the final element of his claim.

19         Defendants' arguments are unpersuasive for four reasons. First, Defendants'

20 reliance upon DOC Policy 700.100 is wholly misplaced. Although the policy

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 9

provides for termination of offenders who are found guilty of "serious infractions," ECF No. 32-1 at 9, the policy does not support termination in this circumstance because Plaintiff's infraction for "wheelchair racing" was dismissed one week before he was terminated.  ECF No. 38, Attachment B.  Moreover, contrary to Defendants' assertions, this infraction was not dismissed "on a technicality" for failure to specify which rule Plaintiff had violated.  ECF No. 40 at 3.  Rather, it appears that the infraction was dismissed because the alleged conduct did not actually violate any established rule.  *See* ECF No. 38, Attachment B ("It is not clear in the infraction or the finding what written rule is being violated by the observed behavior.").  Thus, Defendants may not rely upon the fact that Plaintiff received an infraction for "wheelchair racing" to support their termination decision.

Second, there is reason to question the sincerity of Defendants' offender safety concerns.  According to Plaintiff, Defendants Biddulph, Lawrence and Barlow never mentioned safety concerns or the "wheelchair racing" incident during the February 23rd termination hearing.  ECF No. 38 at ¶ 10; ECF No. 39 at ¶ 9.  Rather, these Defendants simply explained that Plaintiff was being terminated because the facility no longer had a need for a wheelchair pusher in Plaintiff's unit. ECF No. 38 at ¶ 8; ECF No. 39 at ¶ 7.  After the February 23rd termination hearing, Plaintiff was provided with the written notice he was to have received 48-hours

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1   earlier.  ECF No. 32 at ¶ 8.  This notice provides no justification for the

2   termination.  ECF No. 32-7.  Indeed, the record appears to indicate that Defendants

3   did not mention to Plaintiff the "wheelchair racing" incident as a justification for

4   the termination *after* Plaintiff appealed the termination to Defendant Miller-

5   Stout.  *See* ECF Nos. 32-10, 32-11.  Defendants' internal paperwork, a notice to

6   the Assignment Coordinator, shows two reasons to justify the action taken:

7   "infraction & vacant (no need for position)."  ECF No. 32-6.  This notice appears

8   to unjustifiably rely on the dismissed infraction as a reason supporting termination,

9   as the "yes" box is checked and WAC # "102" is handwritten on the form.

10          Third, and in a related vein, Defendants have offered conflicting

11  explanations for Plaintiff's termination during the course of this litigation.  On one

12  hand, Defendants admitted in their Answer that Plaintiff was terminated due to the

13  lack of demand for a wheelchair pusher in his unit.  *See* ECF No. 16, at ¶ 17

14  ("Plaintiff was terminated from his job as a therapy aid[e] because there was a lack

15  of offenders in the unit requiring assistance from a therapy aid[e].  FMRT

16  recommended that Plaintiff be returned to the labor pool and maintain employment

17  upon reassignment.").  On the other hand, Defendants insist in their summary

18  judgment briefing that Plaintiff was terminated solely because his "wheelchair

19  racing" endangered other offenders.  ECF No. 30 at 5-6; ECF No. 40 at 2-3.  The

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 11

1    fact that Defendants have *continued* to offer conflicting explanations for Plaintiff's

2    termination undermines the credibility of their arguments.

3         Finally, Defendants' purported offender safety concerns are not wholly

4    supported by the objective facts in the record. While Defendants have attempted to

5    paint Plaintiff as a reckless "wheelchair racer," the objective evidence suggests that

6    Plaintiff was merely "speed walking / running as a wheel chair pusher." ECF No.

7    32-3. Notably, there is no evidence that Plaintiff was "racing" against other

8    inmates or otherwise engaged in reckless behavior. Rather, Defendants' own

9    evidence indicates that Plaintiff and his therapy patient were simply "playing a

10   game" while going to the pill line to receive their daily medications. ECF No. 32

11   at ¶ 6; ECF No. 32-3. While the Court is mindful of the need to avoid second-

12   guessing prison officials on matters relating to offender safety, *see Pratt v.*

13   *Rowland*, 65 F.3d 802, 807 (9th Cir. 1995), it must also allow the jury to consider

14   evidence which has a tendency to undermine Defendants' credibility. The facts of

15   the alleged "wheelchair racing" incident fall squarely in this category.

16        In sum, there is no basis for awarding summary judgment for Defendants on

17   Plaintiff's First Amendment retaliation claim. When viewed in the light most

18   favorable to Plaintiff, the evidence suggests that Plaintiff's termination was

19   retaliatory and was not reasonably related to a legitimate correctional goal.

20   Although maintaining offender safety is undoubtedly a legitimate correctional

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 12

goal, there are genuine issues of material fact as to whether Defendants were *actually* motivated by offender safety concerns in this case.  Accordingly, Defendants' motion for summary judgment is denied.

**B. Defendant Miller-Stout**

Defendant Miller-Stout seeks dismissal of Plaintiff's claims against her on the ground that she did not personally participate in the alleged constitutional violation.  A supervisor may only be liable for the actions of a subordinate under § 1983 if "(1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (quotation and citation omitted).  In other words, a supervisor will not be liable for a constitutional violation committed by his or her subordinate unless the supervisor directly participated in the violation or knew of the violation and failed to prevent it.  *Id.* (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Here, there is little evidence tying Defendant Miller-Stout to the alleged retaliation.  It is undisputed that Defendant Miller-Stout's involvement in Plaintiff's termination was limited to reviewing and responding to Plaintiff's appeal.  There have been no allegations that she either directed her subordinates to terminate Plaintiff or knew that retaliatory termination was imminent and failed to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1  prevent it.  Instead, Plaintiff asserts that Defendant Miller-Stout "signed the appeal

2  response upholding his retaliatory job termination."  ECF No. 37 at 5.  This is

3  insufficient to establish supervisory liability for the alleged retaliation.

4  Accordingly, Plaintiff's First Amendment retaliation claim against Defendant

5  Miller-Stout in her personal capacity is dismissed.

6  **C. Official Capacity Claims Against All Defendants**

7       Having dismissed the claims against Defendant Miller-Stout in her personal

8  capacity, the Court must next consider whether Plaintiff's claims against

9  Defendant Miller-Stout and the remaining AHCC Defendants in their official

10  capacities survive summary judgment.  The Ninth Circuit recently explained the

11  distinction between individual-capacity and official-capacity claims as follows:

12       Personal-capacity suits seek to impose personal liability upon a
    government official for actions he takes under color of state law....
13       Official-capacity suits, in contrast, "generally represent only another
    way of pleading an action against an entity of which an officer is an
14       agent." ... As long as the government entity receives notice and an
    opportunity to respond, an official-capacity suit is, in all respects other
15       than name, to be treated as a suit against the entity.... It is not a suit
    against the official personally, for the real party in interest is the
16       entity. Thus, while an award of damages against an official in his
    personal capacity can be executed only against the official's personal
17       assets, a plaintiff seeking to recover on a damages judgment in an
    official-capacity suit must look to the government entity itself.
18
    *Community House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 966-67 (9th Cir.
19
    2010) (*citing Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations and
20
    footnotes omitted).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 14

Local government officials may be liable in their official capacities under § 1983 where their "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691 (1978). Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (citation omitted). The custom or policy of inaction, however, must be the result of a "conscious," *City of Canton v. Harris*, 489 U.S. 378, 389 (1989), or "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Plaintiff has made no showing that any of the Defendants acted according to customs or policies which amounted to a deliberate indifference of his constitutional rights. Because Plaintiff has failed to make out a prima facie case, summary judgment on his official-capacity claims against each of the AHCC Defendants is warranted. *See Butler v. Elle*, 281 F.3d 1014, 1026 n. 9 (9th Cir. 2002).

//

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

**D. Qualified Immunity**

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted).  In deciding whether a government official is entitled to qualified immunity, the court must consider (1) whether the facts, viewed in the light most favorable to the party alleging the injury, show that the official's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable official would have understood that his actions violated that right.  *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

Here, Defendants Biddulph, Lawrence and Barlow argue that they are entitled to qualified immunity because they did not violate Plaintiff's First Amendment rights, and that, even if a violation did in fact occur, the right at issue was not clearly-established at the time of the violation.  Neither argument is persuasive.  As discussed above, there is sufficient evidence from which a rational jury could find that Plaintiff was terminated from his position as a therapy aide in retaliation for filing a grievance against Defendants Biddulph, Lawrence and Barlow.  Moreover, Plaintiff's First Amendment right to file grievances without

fear of retaliation was clearly established as of February 2011.  *See Rhodes v.*

*Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) ("The prohibition against retaliatory

punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity

purposes.") (quotation and citation omitted).  Accordingly, Defendants Biddulph,

Lawrence and Barlow are not entitled to qualified immunity.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Motion for Summary Judgment (ECF No. 29) is **GRANTED in**

**part** and **DENIED in part**.  Plaintiff's claims against Defendant Miller-Stout in

her individual and official capacity are **DISMISSED**.  Plaintiff's claims against all

remaining Defendants **in their official capacities** only are also **DISMISSED**.

The District Court Executive is directed to terminate Defendant Miller-Stout

from this proceeding and revise the caption accordingly.

The District Court Executive is hereby directed to enter this Order and

provide copies to counsel.

**DATED** this 18th day of December, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 17